O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RUDD MILLER, | ) | Case No. CV 14-03392 DDP (AJWx) |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING IN PART AND** |
| | ) | **DENYING IN PART DEFENDANT'S** |
| v. | ) | **MOTION TO DISMISS** |
| | ) | |
| WELLS FARGO BANK, N.A., | ) | [Dkt. No. 40] |
| | ) | |
| Defendant. | ) | |

Presently before the Court is Defendant Wells Fargo Bank, N.A. ("Wells Fargo")'s Motion to Dismiss the First Amended Complaint (the "Motion"). (Mot., Dkt. No. 40.)  Having considered the parties' submissions, the Court GRANTS in part and DENIES in part the Motion and adopts the following order.

**I.   BACKGROUND**

On or about October 30, 2007, Plaintiff Rudd Miller ("Miller") and his wife, Maria Miller ("Maria") (collectively, the "Millers") obtained a loan from World Savings Bank, FSB ("Wold Savings"), secured by the Millers' residence in Thousand Oaks, CA.  (First Amended Complaint ("FAC"), Dkt. No. 23, ¶ 16.)  On or about July 7, 2011, Wells Fargo caused to be recorded a Notice of Default against

1  the Millers' residence.  (Id. ¶ 17 & Ex. 1.)  The Notice of Default

2  indicated that Wells Fargo was the beneficiary and servicer to the

3  loan.[1]  (Id.)  In 2012, the Millers applied for a loan

4  modification.  (Id. ¶ 18.)  In June 2012, Wells Fargo reviewed the

5  Millers' loan modification application and approved the Millers for

6  a Trial Period Plan ("TPP") pursuant to the Home Affordable

7  Modification Program ("HAMP").  (Id. ¶ 19 & Ex. 2.)  Miller alleges

8  that, under the terms of the TPP, Wells Fargo promised to

9  permanently modify the Millers' loan pursuant to HAMP guidelines

10  after the Millers made the three modified monthly loan payments

11  specified in the TPP.  (Id. ¶ 19.)

12      On June 16, 2012, Maria passed away.  (Id. ¶ 21.)  Miller

13  continued to comply with the terms of the TPP by making the

14  required three payments.  (Id. ¶ 20.)  Miller alleges that on or

15  around October 2012, Wells Fargo issued the Millers a HAMP

16  Modification Agreement that listed both Miller's name and his

17  wife's name.  (Id. ¶ 22 & Ex. 3.)  Miller alleges that Wells Fargo

18  representatives advised him that, due to his wife's death, a new

19  HAMP Modification Agreement would be issued to him that solely

20  reflected Miller's name on the loan, rather than both his and his

21  wife's names.  (Id. ¶ 23.)  Miller alleges that Wells Fargo

22  representatives told him to continue making payments per the

23  original HAMP Modification Agreement in the meantime.  (Id.)

24  Miller alleges that he continued to make monthly payments pursuant

25

26      [1] The FAC does not specify how Wells became the successor in
27  interest to World Savings, but Wells Fargo's Motion indicates that
    Wold Savings changed its name to Wachovia Mortgage, FSB on December
    31, 2007.  (Mot. at 1-2.)  On November 1, 2009, Wachovia Mortgage,
28  FSB became a division of Wells Fargo.  (Id.)

1  to the original HAMP Modification Agreement, and that he made

2  payments from October 2012 through February 2012. (<u>Id.</u> ¶ 25.)

3       Miller alleges that after February 2012, Wells Fargo refused

4  to accept his monthly payments. (<u>Id.</u> ¶ 26.) Miller alleges that

5  Wells Fargo did not follow through on its representations that

6  Miller would be issued a new HAMP Modification Agreement and that

7  Miller could continue making payments under the original HAMP

8  Modification Agreement in the interim. (<u>Id.</u>) On June 17, 2014,

9  Wells Fargo cause to be recorded a Notice of Trustee's Sale against

10  Miller's residence. (<u>Id.</u> ¶ 27 & Ex. 4.) There was a foreclosure

11  sale scheduled for Miller's property on December 8, 2014. (<u>Id.</u> ¶

12  28.)

13       Miller alleges claims for: (1) violation of Cal. Civ. Code §

14  2924.11(b), (2) breach of contract, (3) breach of the implied

15  covenant of good faith and fair dealing, (4) promissory estoppel,

16  (5) negligence, (6) fraud and intentional misrepresentation, (7)

17  violation of Cal. Bus. Prof. Code § 17200, and (8) declaratory and

18  injunctive relief. (<u>See generally</u> FAC.) Miller requests

19  compensatory and punitive damages, statutory penalties, specific

20  performance, injunctive relief prohibiting foreclosure on his

21  residence, and attorney's fees and costs. (<u>Id.</u>) Wells Fargo moves

22  to dismiss all claims.

23  **II.  LEGAL STANDARD**

24       A 12(b)(6) motion to dismiss requires the court to determine

25  the sufficiency of the plaintiff's complaint and whether or not it

26  contains a "short and plain statement of the claim showing that the

27  pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under

28  Rule 12(b)(6), a court must (1) construe the complaint in the light

1   most favorable to the plaintiff, and (2) accept all well-pleaded

2   factual allegations as true, as well as all reasonable inferences

3   to be drawn from them.  See Sprewell v. Golden State Warriors, 266

4   F.3d 979, 988 (9th Cir. 2001), amended on denial of reh'g, 275 F.3d

5   1187 (9th Cir. 2001); Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th

6   Cir. 1998).

7       In order to survive a 12(b)(6) motion to dismiss, the

8   complaint must "contain sufficient factual matter, accepted as

9   true, to 'state a claim to relief that is plausible on its face.'"

10  Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp.

11  v. Twombly, 550 U.S. 544, 570 (2007)).  However, "[t]hreadbare

12  recitals of the elements of a cause of action, supported by mere

13  conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.

14  Dismissal is proper if the complaint "lacks a cognizable legal

15  theory or sufficient facts to support a cognizable legal theory."

16  Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th

17  Cir. 2008); see also Twombly, 550 U.S. at 561-63 (dismissal for

18  failure to state a claim does not require the appearance, beyond a

19  doubt, that the plaintiff can prove "no set of facts" in support of

20  its claim that would entitle it to relief).  A complaint does not

21  suffice "if it tenders 'naked assertion[s]' devoid of 'further

22  factual enhancement.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550

23  U.S. at 556).  "A claim has facial plausibility when the plaintiff

24  pleads factual content that allows the court to draw the reasonable

25  inference that the defendant is liable for the misconduct alleged."

26  Id.  The Court need not accept as true "legal conclusions merely

27  because they are cast in the form of factual allegations."  Warren

28  v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).

4

III.  DISCUSSION

    A.  Violation of California Civil Code § 2924.11(b)

    California Civil Code § 2924.11 is part of the Homeowners'
Bill of Rights ("HBOR"), and it forbids a mortgage servicer from
recording a notice of default under certain circumstances.  Miller
alleges a violation of part (b) of Section 2924.11, which provides
that if a foreclosure prevention alternative has been approved in
writing  after the recordation of a notice of default, a mortgage
servicer may not then record a notice of trustee's sale or conduct
a trustee's sale if "(1) [t]he borrower is in compliance with the
terms of a written trial or permanent loan modification,
forbearance or repayment plan," or "(2) [a] foreclosure prevention
alternative has been approved in writing by all parties . . and
proof of funds or financing has been provided to the servicer."
Cal. Civ. Code § 2924.11(b).

    Wells Fargo argues that (1) Section 2924.11(b) is not
applicable to Miller's circumstances because it only applies after
a borrower has been denied a loan modification, and (2) even if it
did apply, Miller failed to satisfy the requirements because Miller
was not in compliance with the terms of the HAMP Modification
Agreement when the Notice of Trustee's Sale was recorded in May
2013.

    Wells Fargo's primary argument is that that Section 2924.11(b)
applies only when a mortgage servicer has denied a first lien loan
modification application.  (See Mot. at 2.)  However, Wells Fargo
cites to a version of Section 2924.11 that is not yet in effect.
The current version of Section 2924.11(b), effective January 1,
2013, provides borrowers with protection in the case of an approved

1  foreclosure prevention alternative, as described above.  See 2012
2  Cal. Stat. ch. 86, § 14.  The version of Section 2924.11(b) that
3  Wells Fargo references in its Motion is not effective until January
4  1, 2018.  See 2012 Cal. Stat. ch. 86, § 15; see also Cal. Civ. Code
5  § 2924.11(j) ("This section shall remain in effect only until
6  January 1, 2018 . . .").  Therefore, Wells Fargo's arguments in
7  this respect are inapposite.  Section 2924.11(b) is applicable to
8  Miller's circumstances, as alleged in the FAC, because Miller was
9  approved for a modification and entered into the TPP after notice
10 of default, and further because Miller alleges that he complied
11 with the TPP in making all required payments.

12      The FAC alleges that Miller complied with the terms of a
13 written trial or permanent loan modification plan.  Miller made all
14 three required payments under the TPP, and he made continued
15 payments under HAMP until Wells Fargo refused to accept further
16 payments.  Furthermore, a foreclosure prevention alternative - the
17 TPP - was approved in writing  after the recordation of a notice of
18 default on Miller's residence.  Accordingly, Miller has stated a
19 plausible claim under section 2924.11(b).

20      **B.  Breach of Contract**

21      Miller also alleges a claim for breach of contract.  The
22 elements of a breach of contract claim are: (1) the existence of a
23 contract, (2) plaintiff's performance or excuse for nonperformance,
24 (3) defendant's breach, and (4) damages.  Oasis West Realty, LLC v.
25 Goldman, 51 Cal.4th 811, 821 (2011).

26      Wells Fargo contends that the breach of contract claim should
27 be dismissed because the FAC "does not identify what agreement
28 Wells Fargo breached or specifically how Wells Fargo breached it."

1   (Mot. at 3.)  Wells Fargo further argues that, regardless of

2   whether the contract at issue is the June 2013 TPP or the October

3   2012 HAMP Modification Agreement, Miller has not pled facts showing

4   Wells Fargo breached either agreement.  (<u>Id.</u> at 3-4.)  Wells Fargo

5   also argues that the TPP was a "temporary" agreement that lasted

6   only through September 2012, the month of the third (and last)

7   required payment under the conditions of the TPP.  (<u>Id.</u>)

8        Miller, in his Opposition, clarifies that the contract Wells

9   Fargo allegedly breached is the TPP.  (<u>See</u> Opp'n at 9.)  Miller

10  argues that the clear language of the TPP itself as well as HAMP

11  guidelines, demonstrate that the TPP did constitute a contract

12  between Miller and Wells Fargo.  (<u>Id.</u>)  Miller states that he

13  complied with the terms of the TPP, and Wells Fargo thus breached

14  the contract by failing to offer him a permanent loan modification.

15  (<u>Id.</u>)

16       The Ninth Circuit has explicitly held that a TPP under the

17  HAMP framework is in itself a contract, regardless of whether the

18  parties to the TPP subsequently agree to a permanent modification

19  agreement.  <u>Corvello v. Wells Fargo Bank, NA</u>, 728 F.3d 878, 883

20  (9th Cir. 2013) (adopting the Seventh Circuit's reasoning in <u>Wigod</u>

21  <u>v. Wells Fargo Bank, N.A.</u>, 673 F.3d 547 (7th Cir. 2012)); <u>see also</u>

22  <u>Romero v. Nationstar Mortgage LLC</u>, No. 14-CV-02954-TLN-DAD, 2015 WL

23  4393969, at *4 (E.D. Cal. July 15, 2015) ("One of the guiding

24  principles that have emerged from recent cases interpreting HAMP is

25  that a contract for a loan modification is created upon successful

26  completion of a TPP.") (citing cases).  Specifically, the "natural

27  and fair interpretation of the TPP is that the servicer must send a

28

1  signed Modification Agreement offering to modify the loan once

2  borrowers meet their end of the bargain." _Id._

3       If Miller satisfied the terms of the TPP, then Wells Fargo had

4  an obligation to offer Miller a permanent loan modification.

5  Although it appears Miller was sent some form of loan modification

6  agreement that included both him and his spouse in the contract,

7  Wells Fargo allegedly never fulfilled its promise in sending Miller

8  a revised loan modification agreement that listed only Miller as

9  the borrower.  Such circumstances could be interpreted to mean that

10 Wells Fargo did not in good faith fulfill its obligations under the

11 TPP.  _See_ _Bushell v. JPMorgan Chase Bank, N.A._, 220 Cal. App. 4th

12 915, 929 (2013) ("Chase was required to offer plaintiffs a good

13 faith permanent modification of their loan given that plaintiffs

14 have alleged they complied with the TPP and qualified under HAMP").

15 Accordingly, Miller has adequately pled his breach of contract

16 claim.

17      **C.  Implied Covenant of Good Faith and Fair Dealing**

18      "Under California law, which applies, all contracts contain an

19 implied covenant of good faith and fair dealing.  This covenant

20 requires each contracting party to refrain from doing anything to

21 injure the right of the other to receive the benefits of the

22 agreement." _San Jose Prod. Credit Ass'n v. Old Republic Life Ins._

23 _Co._, 723 F.2d 700, 703 (9th Cir.1984) (internal quotations

24 omitted).  The covenant supplements the express contractual terms

25 in order to prevent a contracting party from acting in a way that,

26 although it does not technically breach the contract, frustrates

27 the other party's rights to the benefits of the contract.  _Love v._

28 _Fire Ins. Exch._, 221 Cal. App. 3d 1136, 1153 (1990).

1    Wells Fargo argues that Miller's breach of implied covenant
2    claim must fail because (1) the FAC fails to allege facts showing
3    that a contract was formed, and (2) even if a contract existed,
4    California law forbids breach of implied covenant claims that are
5    "superfluous" to a breach of contract claim arising from the same
6    breach.  (Mot. at 4-5.)

7    As addressed, above, the Ninth Circuit has held that a TPP
8    does constitute a contract.  The FAC alleges a breach with respect
9    to the TPP.  It does not allege that a permanent loan modification
10   was agreed to - rather, it alleges that the HAMP Modification
11   Agreement was not provided pursuant to the terms of the contract.
12   The FAC also alleges that Wells Fargo unfairly interefered with
13   Miller's right to receive the benefits of the TPP - namely, the
14   offer of a permanent loan modification.

15   As for Wells Fargo's second argument, Wells Fargo argues that
16   Miller's claim should be dismissed because it is substantively
17   identical to his claim for breach of contract.  However, the case
18   Wells Fargo cites to in support of its argument is not analogous to
19   the present case.  See Guz v. Bechtel Nat'l, Inc., 24 Cal.4th 317,
20   327 (2000).  Guz was an employment case that concerned a breach of
21   contract claim where the employment contract specified an employee
22   could be terminated for good cause.  Id. at 326.  The employee's
23   breach of the implied covenant claim concerned essentially the same
24   issue, whether the employer breached the covenant of good faith and
25   fair dealing when it terminated the plaintiff in bad faith.  Id. at
26   326-27.  Therefore, the court held, the breach of implied covenant
27   claim added nothing to the breach of contract claim, because "[i]n
28   the employment context, an implied covenant theory affords no

separate measure of recovery" other than the contractual recovery itself.  Id. at 352.  However, Guz was an employment law case, and the court specifically noted that "[w]e do not suggest the covenant of good faith and fair dealing has no function whatever in the interpretation and enforcement of employment contracts . . . for example, the covenant might be violated if termination of an at-will employee was a mere pretext to cheat the worker out of another contract benefit to which the employee was clearly entitled, such as compensation already earned.  Id. at 353 n.18.  Here, the facts as pled support a claim for breach of the implied covenant.  Miller was sent a HAMP Modification Agreement; however, the Agreement included his wife, who had previously passed away.  An argument could be made that Wells Fargo was obliged to send Miller a HAMP Modification Agreement in Miller's name only, and that while Wells Fargo had technically complied with the terms of the TPP by providing a permanent loan modification offer, it should have provided Miller with a revised offer when it learned Miller's wife had passed away.

### D. Promissory Estoppel

Miller also alleges a claim for promissory estoppel.  Under the doctrine of promissory estoppel, "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."  Kajima/Ray Wilson v. Los Angeles Cnty. Metro. Transp. Auth., 23 Cal. 4th 305, 310 (2000).  The elements of promissory estoppel claim are: "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the

1    promise is made; (3)[the] reliance must be both reasonable and
2    foreseeable; and (4) the party asserting the estoppel must be
3    injured by his reliance." <u>Advanced Choices, Inc. v. Dep't of</u>
4    <u>Health Servs.</u>, 182 Cal. App. 4th 1661, 1672 (2010).
5         Wells Fargo argues that Miller cannot bring his promissory
6    estoppel claim because (1) it is premised on the same allegations
7    as his breach of contract claim, and (2) he has not pled
8    detrimental reliance because he was already legally obligated to
9    make the payments on his loan.  (Mot. at 5-6.)
10        A plaintiff is allowed to plead alternative theories of a
11   case.  <u>See</u> Fed. R. Civ. P. 8(d)(2)-(3) (allowing for pleading of
12   alternative claims and for inconsistent claims); <u>Putnam v. Putnam</u>
13   <u>Lovell Grp. NBF Securites, Inc.</u>, No. C 05-1330 CW, 2006 WL 1821207,
14   at *7 (N.D. Cal. June 30, 2006) (allowing a breach of implied
15   contract claim and promissory estoppel claim to proceed as
16   alternative claims since "plaintiffs are allowed to plead mutually
17   exclusive claims in the alternative, but are not allowed to recover
18   on inconsistent theories").  Wells Fargo cites to <u>Fontenot v. Wells</u>
19   <u>Fargo Bank, N.A.</u>, which it contends stands for the proposition that
20   Miller cannot bring a promissory estoppel claim based on an express
21   term in a contract.  <u>See Fontenot v. Wells Fargo Bank, N.A.</u>, 198
22   Cal. App. 4th 256, 275 (2011).  However, at this stage of the
23   proceedings, it is unclear what the terms of the TPP required.  It
24   is possible that Wells Fargo fulfilled its obligations under the
25   contract by providing the original HAMP Modification Agreement that
26   included both Miller and his wife; accordingly, providing a revised
27   modification agreement might not be expressly required by the
28   contract.  While Wells Fargo may still challenge its obligations

under the TPP, Miller should be allowed to plead an alternative promissory estoppel claim.  <u>See</u> <u>Rowland v. JPMorgan Chase Bank</u>, N.A., No. C 14-00036 LB, 2014 WL 992005, at *8 (N.D. Cal. Mar. 12, 2014) ("because Defendants may still challenge the [Plaintiffs'] breach of contract claim, their promissory estoppel claim can remain").

Wells Fargo also argues that the promissory estoppel claim fails because Miller has failed to plead facts supporting detrimental reliance.  Wells Fargo argues that Miller only alleges that he continued to may payments on his loan, and that this in itself cannot constituted detrimental reliance because Miller was already obliged to make those payments either pursuant to the alleged HAMP Modification Agreement or his original promissory note.  (Mot. at 6.)  Under the doctrine of promissory estoppel, "a promisor is bound when he should reasonably expect a substantial change of position, either by act of forbearance, in reliance on his promise, if injustice can be avoided only by its enforcement." <u>Youngman v. Nev. Irrigation Dist.</u>, 70 Cal.2d 240, 249 (1969). Here, the FAC and Miller's Opposition brief merely allege that Miller relied on Wells Fargo's promise to provide a revised HAMP Modification Agreement by continuing to make payments on the loan. Because the FAC does not contain facts showing that Miller relied on Wells Fargo's promise in any way other than continuing to make payments, Miller has not pled facts supporting detrimental reliance.  <u>Compare</u> <u>Beck v. Wells Fargo Home Mortgage, N.A.</u>, No. 10-CV-2150 BEN NLS, 2010 WL 5340563, at *2 (S.D. Cal. Dec. 10, 2010) (holding that making payments plaintiff was already obligated to make did not constitute detrimental reliance) <u>with</u> <u>West v.</u>

1   _JPMorgan Chase Bank, N.A._, 214 Cal. App. 4th 780, 805 (2013)

2   (summarizing cases where courts found detrimental reliance when

3   plaintiffs decided to forego pursuing other remedies for default

4   and refrained from attempting to sell their homes).

5       **E.  Negligence**

6       The elements of a negligence claim are: (1) the existence of a

7   duty to exercise due care, (2) breach of that duty, (3) causation,

8   and (4) damages.  _Merrill v. Navegar, Inc._, 26 Cal.4th 465, 500

9   (2001).  The "existence of a duty of care owed by a defendant to a

10  plaintiff is a prerequisite to establishing a claim for

11  negligence."  _Nymark v. Heart Fed. Savings & Loan Assn._, 231

12  Cal.App.3d 1089, 1095 (1991).

13      Wells Fargo contends that the FAC fails to state a claim for

14  negligence because (1) Miller cannot recover in tort for an act

15  that is essentially a breach of contract, and (2) Wells Fargo does

16  not owe Miller a duty of care beyond its role as a lender.

17      Courts have generally held that, under California law, a

18  lender does not owe a fiduciary duty to a borrower.  _See_, e.g.,

19  _Walters v. Fidelity Mortg. of California_, 730 F. Supp. 2d 1185,

20  1205 (E.D. Cal. 2010).  Courts have held so in circumstances where

21  a loan servicer offers to modify a borrowers loan, reasoning that

22  the servicer's "involvement in the loan transaction does not exceed

23  the scope of its conventional role as a lender of money."

24  _Deschaine v. IndyMac Mortg. Servs._, 2014 U.S. Dist. LEXIS 8541, at

25  *17 (E.D. Cal. Jan. 22, 2014) (internal quotation marks omitted);

26  _see also Nymark v. Heart Fed. Sav. & Loan Assn._, 231 Cal. App. 3d

27  1089, 1096 (1991).

28

13

1    However, the rule is not absolute, and courts have found
2  fiduciary duty in certain circumstances.  In California, court have
3  employed a six factor test to determine whether a financial
4  institution owes a duty of care to a borrower.  The court considers
5  "[1] the extent to which the transaction was intended to
6  affect the plaintiff, [2] the foreseeability of harm to him, [3]
7  the degree of certainty that the plaintiff suffered injury, [4] the
8  closeness of the connection between the defendant's conduct and the
9  injury suffered, [5] the moral blame attached to the defendant's
10 conduct, and [6] the policy of preventing future harm." <u>Nymark</u>,
11 231 Cal. App. 3d at 1098 (citing <u>Biakanja v. Irving</u>, 49 Ca.2d 647
12 (1958)).  Under some circumstances, these factors may be met in the
13 context of loan modification discussions between lenders and
14 borrowers.  See, e.g. Robinson v. Bank of Am., No. 12-CV-494-RMW,
15 2012 WL 1932842, at *7 (N.D. Cal. May 29, 2012); Ansanelli v. JP
16 Morgan Chase Bank, N.A., No C 10-3892 WHA, 2011 WL 1134451, at *7
17 (N.D. Cal. Mar. 28, 2011); Watkinson v. MortgageIT, Inc. , No.
18 10-CV-327-IEG, 2010 WL 2196083 (S.D. Cal. June 1, 2010); Garcia v.
19 Ocwen Loan Servicing, LLC , No. C 10-290 PVT, 2010 WL 1881098, at
20 *1-3. (N.D. Cal. May 10, 2010).
21    There is currently a split in California courts as to whether
22 lenders owe borrowers a duty of care in processing a loan
23 modification.  One court has held that lenders have a duty of care
24 to reasonably process a loan modification application where it is
25 foreseeable that failure to do so will result in significant harm
26 to the borrower.  <u>Alvarez v. BAC Home Loans Servicing, L.P.</u>, 228
27 Cal.App.4th 941, 948 (2014) (holding that lenders have a "duty to
28 use reasonable care in the processing of a loan modification")

1  However, other courts have concluded that lenders do not owe a duty
2  of care when considering a residential loan modification.  <u>Lueras</u>
3  <u>v. BAC Home Loans Servicing, LP</u>, 221 Cal. App. 4th 49, 68 (2013)
4  (holding that the defendant banks "did not have a common law duty
5  of care to offer, consider, or approve a loan modification, or to
6  offer [the plaintiff] alternatives to foreclosure.")  As noted
7  above, federal district courts in California have also reached
8  different conclusions regarding this issue.

9      At this stage of the proceedings, the balance of these factors
10 suggests that Wells Fargo did owe Miller a duty of care under the
11 circumstances.  First, the loan modification was intended to affect
12 Miller, as it would determine whether Miller would be able to keep
13 his home.  Second, the potential harm to Miller from the failure to
14 issue a revised loan modification as well as the alleged assurances
15 that a revised document would be issued was readily foreseeable, as
16 Miller's reliance on the alleged statements would result in
17 eventual default and foreclosure.  Third, the injury to Miller was
18 certain, in that a loan modification was never agreed to and Wells
19 Fargo initiated foreclosure proceedings on his residence.  Fourth,
20 there was a close connection between Wells Fargo's conduct and the
21 injury suffered, since Wells Fargo's alleged failure to provide a
22 revised loan modification agreement precipitated the foreclosure
23 proceedings.  As for the fifth factor, moral blame, it is unclear
24 whether it would attach to Wells Fargo's alleged conduct at this
25 stage of the proceedings.  <u>But see</u> <u>Alvarez</u>, 228 Cal. App. 4th at
26 949 (stating that "[t]he borrower's lack of bargaining power
27 coupled with conflicts of interest that exist in the modern loan
28 servicing industry provide a moral imperative that those with the

1    controlling hand be required to exercise reasonable care in their
2    dealings with borrowers seeking a loan modification.")  Finally,
3    discouraging lenders from misrepresenting to borrowers that a loan
4    modification offer would be issued imminently while at the same
5    time deciding to foreclose is consistent with the federal
6    government's policy of facilitating loan modifications through HAMP
7    as well as state-level policies encouraging the offer of loan
8    modifications and other foreclosure alternatives.  <u>See</u>, <u>e.g.</u>, Cal.
9    Civ. Code § 2923.6 (establishing a scheme that encourages lenders
10   to offer loan modifications to borrowers).  Thus, five of the six
11   <u>Nymark/Biakanja</u> factors weigh in favor of imposing a duty of care
12   on Wells Fargo in the present circumstances.

13       **F.  Fraud**

14       The elements of a fraud claim are : (1) a false
15   misrepresentation of material fact; (2) the defendant's knowledge
16   of its falsity; (3) intent to defraud; (4) justifiable reliance;
17   and (5) resulting damage."  <u>Segura v. Wells Fargo Bank, N.A.</u>, No.
18   CV-14-04195-MWF (AJWx), 2014 WL 4798890, at *14 (C.D. Cal. Sept.
19   26, 2014) (citing <u>Lazar v. Superior Court</u>, 12 Cal.4th 631, 638
20   (1996)).  In addition, Federal Rule of Civil Procedure 9(b)
21   requires plaintiffs to plead fraud claims with particularity;
22   specifically, plaintiffs must allege "the who, what, when, where,
23   and how of the misconduct charged."  <u>Vess v. Ciba-Geigy Corp.</u>, 317
24   F.3d 1097, 1106 (9th Cir.2003) (internal quotation marks omitted).

25       Here, Miller has not sufficiently alleged the "who," "when,"
26   and "where" of Wells Fargo's conduct.  The FAC alleges that "Wells
27   Fargo representatives advised Plaintiff that due to his wife's
28   death, a new HAMP Modification Agreement that solely reflects

1  Plaintiff's name on the loan would be issued, but to proceed with
2  making payments per the HAMP Modification Agreement." FAC ¶ 23.
3  It does not allege who made these statements to Miller, when they
4  were made, and where they were made.  Miller's Opposition brief
5  states that Wells Fargo's communications came in the form of a
6  letter and in various phone conversations, and were made by
7  multiple "customer relation managers." Opp. at 14.  These facts
8  are not alleged in the FAC, and further, they are not sufficient to
9  satisfy the Rule 9(b) pleading standard.  Accordingly, Miller has
10 not alleged his fraud claim with sufficient particularity.

11     **G.   Violation of California Business and Professions Code §**
12 **17200**

13     California's Unfair Competition Law ("UCL") prohibits any
14 "unlawful, unfair or fraudulent business act or practice."  Cal.
15 Bus. & Prof. Code § 17200.  The UCL incorporates other laws, and
16 therefore violations of other laws may be treated as unfair
17 competition under the "unlawful" prong of the UCL.  See Kasky v.
18 Nike, Inc., 27 Cal.4th 939, 949 (2002).  A business practice may
19 also be "unfair or fraudulent in violation of the UCL even if the
20 practice does not violate any law." Olszewski v. Scripps Health,
21 30 Cal.4th 798, 827 (2003).  "Fraudulent" business practices must
22 be pled with particularity under Rule 9(b).  Kearns v. Ford Motor
23 Co., 567 F.3d 1120, 1125 (9th Cir. 2009).

24     To the extent that Miller's UCL claim is premised on his
25 allegations of fraud, they do not meet the Rule 9(b) standard and
26 must be dismissed.  Similarly, the FAC alleges that Wells Fargo's
27 conduct is unlawful "in that it violated regulatory prescriptions
28

17

1  designed to protect home loan borrowers, such as Plaintiff,

2  including but not limited to HAMP guidelines and directives."  FAC

3  ¶ 67.  Although a heightened pleading standard does not apply to

4  allegations of "unlawful" business practices, the UCL claim does

5  not identify any particular regulation or law that Wells Fargo

6  allegedly violated, instead stating that Wells Fargo violated

7  prescriptions "including but not limited to HAMP guidelines and

8  directives."  This allegation is too vague and general for the

9  Court to find Miller has stated a claim for an "unlawful" busniess

10 practice.  Even with respect to HAMP, it is unclear what specific

11 HAMP guidelines Miller is alleging that Wells Fargo violated.

12      It is unclear whether Miller's UCL claim is premised on the

13 allegations that underlie his negligence cause of action.

14 Accordingly, Miller's UCL claim is dismissed with leave to amend.

15     **H.  Declaratory and Injunctive Relief**

16      The FAC seeks declaratory relief in the form of a judicial

17 declaration that the HAMP Modification Agreement is valid and

18 legally enforceable, and injunctive relief to enjoin Wells Fargo

19 from foreclosing on Miller's property.  FAC ¶¶ 76, 78.

20      Wells Fargo argues that Miller cannot seek injunctive relief

21 because he has not tendered the unpaid debt on his mortgage.  Under

22 common law, an action to set aside a wrongful foreclosure sale must

23 be accompanied by "an offer to pay the full amount of the debt for

24 which the property was security."  Arnolds Mgmt. Corp. v. Eischen,

25 158 Cal. App. 3d 575, 578 (1984).

26      Miller has not alleged tender; accordingly, he may not seek

27 equitable relief to set aside the foreclosure.  However, to the

28 extent that Miller is seeking relief not only under common law but

also under statute, he may be entitled to seek injunctive relief
without alleging tender.   HBOR provides for injunctive relief as a
remedy against foreclosure if "a trustee's deed upon sale has not
been recorded."  Cal. Civ. Code § 2924.12(a).  Here, it appears to
the Court that a trustee's deed upon sale has not been recorded.
Miller received a notice of sale, but it appears that no sale has
yet taken place.  Although the issue is unresolved, courts have
held that a plaintiff may seek injunctive relief under Section
2924.12(a) whether or not there has been tender.  Bingham v. Ocwen
Loan Servicing, LLC, No. 13-CV-04040-LHK, 2014 WL 1494005, at *6
(N.D. Cal. Apr. 16, 2014)

     Here, the FAC does not state that Miller is seeking injunctive
relief under Section 2924.12(a), and the Opposition brief only
argues that Miller may seek equitable relief.  It is unclear
whether Miller is seeking injunctive relief under statute.  Due to
this lack of clarity, Miller's injunctive relief claim is dismissed
with leave to amend.

**IV.   CONCLUSION**

     For the foregoing reasons, Defendants' Motion is GRANTED in
part and DENIED in part as follows: the promissory estoppel, fraud,
UCL, and injunctive relief claims are dismissed with leave to
amend.  The Motion is denied in all other respects.


IT IS SO ORDERED.


Dated: August 27, 2015

                                   DEAN D. PREGERSON
                                   United States District Judge


19